Good morning, ladies and gentlemen. Judges Beatty and I welcome our colleague Judge Lucero from the Tenth Circuit sitting with us today. Thank you for joining us. Just a few housekeeping matters before we start. I will call the cases in the matter that they're listed on the calendar. And by each case, you have a designation of the time, and that means if you are the appellant, that's your full time, and so your rebuttal is part of that full time. And if you are the appellant, it's your responsibility to keep track of the time. However, if you tell me when you approach the podium aspirationally how much time you would like to save, I am looking at the clock, so I will try to remind you when you get to that point. The clock counts down, and then it goes up. And so when it starts going up, it doesn't mean that I gave you extra time. It means you've moved into overtime. But that being said, when you reach the time that you're completed, if you're answering a question of the court, please feel free to continue to answer the court's question. And obviously, we have to decide these cases, so I want to make sure that my colleagues have an opportunity to ask you any questions. And so if we take you overtime, then that's fine. But if you want to go overtime and we don't have any more questions, then that's not fine. But I guess that's sort of the way that it goes. The first matter on calendar is Joan Coley v. William Barr, case number 1672789. Ten minutes each side. Good morning, Your Honors, and may it please the Court, I'd like to reserve three minutes of rebuttal time if possible. Okay. My name is Lauren Harriman, counsel on behalf of Petitioner Mr. Joan Benueve. Regarding the 2006 entry in the timeline,  I just characterized the immigration judge's finding of fact. On Administrative Record page 101, the immigration judge cited Exhibit 3, tab B, to cite Petitioner's testimony regarding the timeline, specifically regarding the date his unadopted son married Prime Minister Karase's daughter. On Administrative Record page 4, the BIA cites to the same exhibit, Exhibit 3, tab B, to claim that Petitioner was, quote, happily preparing to return to Fiji for the wedding, end quote. Administrative Record page 421, Exhibit B actually starts on 420, but the timeline entry issue is on Administrative Record page 421, clearly evidences that the timeline does not state that Petitioner was happily preparing to return to Fiji for the wedding. Where a misapprehension of fact affected the trier of facts conclusion, this court must remand. This court decided that rule in 1998 in Stoyanov v. INS. With regards to the immigration judge's adverse credibility determination-based- So it's just a Real ID Act, right? Yes. Okay, and so there's, like, three different instances that are cited as to being problematic. Yes, Your Honor. Which the Real ID Act is more difficult for you to overcome. I guess I feel like- how do we say your client's name? Joan Benueve. Benueve? Okay. I feel like that there's something going on here that I can't tell what's going on, that your client clearly was a political individual, was very much involved in all of this, and I have- and the- with regard to we have the factions that are involved in all of this, and it seems quite unusual that he wouldn't know whether he was in favor of the coup or against the coup and all of that. And so I'm not- and then there's long periods of time where nothing happens on this particular case. It falls into a hole for about five years or something along those lines. And so it just- the suspicious part of me feels like that there's something that- about this individual that you know and that the government knows that I don't know and what's going on regarding the coup and all of that. And something doesn't- it's not matching up. Your Honor, I think the reason things might not be matching up clearly is because the immigration judge on administrative record page 5 is clearly confused when she's considering the- there was a coup in 1987 and a coup in 2000, and when she's going through and trying to decide whether Mr. Benueve is credible or not, the immigration judge confuses the two coups in her- But he's just not a low-level government- he's not a low-level person in all of this. And so when he's talking about, well, yeah, I supported it, but then not that type of activity, or, I mean, it's almost like I can't tell whether he was really involved in a lot of bad things, war criminal type of activity or something along those lines that no one wants to talk about, or was it aligned with what the United States wanted to be happening in that country or whatever. I just- something just doesn't match. I think it's less an issue of war crimes and more an issue of he did have an official position in the SVP party. He was really high up. In that secretarial role, he did give press releases. He did talk to the press. He did talk both in written form to the press and over the radio to the press. And so in his official position, he made statements that he didn't personally agree with, which this court has found does not necessarily indicate- But could the IJ think like, okay, you're talking out of both sides of your mouth, and I don't believe you here. I think you were totally involved in that coup, and you're lying about it now to gain some sort of advantage. And then he also is using all of that. It's all meshed together because he doesn't apply for asylum for a very long time after he's here, and he wants to somehow get past the bar because he says, well, I'm watching it. I'm waiting for- I want to go back, but I'm waiting for it to be safe to go back. Well, he did want to go back until Commander Bananrama made the announcement that there would be no free and open elections in Fiji, and it was a mere two months after that announcement when Petitioner knew that he could no longer safely return to Fiji that he did go ahead and file his affirmative asylum application. So it wasn't that there was long periods of time where he could have or not. Well, I would like to think that the United States, if we really thought that someone would be killed for their political action, would consider that in terms of- but then on the other hand, if your client is someone that was involved in, you know, really bad activity, I mean, we probably wouldn't care as much about returning a Nazi to somewhere where people would be, you know- So I certainly don't think any of his activities in the SVP party amounted to anything like being involved in the Nazi party. There may have been some confusion regarding statements that he made in his official capacity, but with regards to the changed circumstances and the timing with which he applied for asylum, Bohora's rule is what controls here, and Bohora merely requires that the changed circumstance only has to push- sorry, Bohora specifically rejected the concept that pushing the applicant from not eligible to eligible is the rule. Instead, it's a material effect on eligibility for asylum is an effect that increases in a non-trivial way the applicant's likelihood of success in his application. A worsening of country conditions that substantially increases the chance that asylum will be granted materially affects the applicant's eligibility for asylum, and it's directly relevant to what's going on here with the change of country conditions, with Commander Bain and Rama's announcement to the international community. It tracks perfectly with this court's law. An important issue in this case is whether there is substantial evidence that supports the agency's adverse credibility determination, and the IJ made that determination on four bases, and the BIA adopted three of them. If we were to find that substantial evidence supported some but not all of those reasons, what is the result? If this court were to find that some but not all were supported, then this court would likely have to find that Mr. Benueve was not credible. However, each of those three points that the immigration judge relied upon, the first was a mischaracterization of the record, the second was a misapprehension of the record, and the failure to find corroborating evidence, the immigration judge never instructed Mr. Benueve to provide- But we only get there if each of the other bases for finding him not credible are not supported by substantial evidence, and he's then deemed credible, and then he should have had the notice and opportunity to respond, correct? Yes, Your Honor. So all of these things sort of tie together. And if we were to find substantial evidence to support a finding that he's not credible, then he wouldn't be entitled to the notice, correct? Yes, Your Honor. And you're agreeing that we only need to find substantial evidence to support one basis for finding him not credible. Some could go out and some could stay in, and there would be a valid address credibility determination? So long as that substantial evidence is supported by the totality of the circumstances. Of course. And I understand that your argument is that there is not substantial evidence for any of those bases if you set out in your brief. Yes, Your Honor. In response to Judge Beatty's question, if one of them is knocked out, you basically, because the court is relying on all three, wouldn't you have to remand for a further determination? I would agree that remand in this case is the court's best course of action and allowing the Board of Immigration to apply the proper standards. Because we're not a court that determines credibility. That's sort of the trial courts, not for the appellate courts. I agree, Your Honor. But there's no, I mean, is there any Ninth Circuit case law that says we have to consider all of those factors in combination? So if the IJ had listed three, four, five reasons, a number of reasons, and the BIA adopted, you know, all or some of them, and we found one was not supported, but others were. Or that even just one was supported by substantial evidence. I don't know of any Ninth Circuit case law. And I'm asking you, can you point us to any case law that would say we have to view them in combination? And if one fails, they all fail. I do not have a cite to that right now, Your Honor. Do you believe that is the law? I believe that per the Real ID Act, the totality of the circumstances is necessary. And so to decide adverse credibility on one element. But the totality of the circumstances allows the IJ to consider inconsistencies, demeanor, corroboration, all sorts of things in determining whether somebody is credible. But that doesn't mean that all of these different reasons for finding somebody not credible have to be considered in combination. I don't see that in any of the case law in Shastra or Wren or any of those cases. So I'm asking you, can you cite us to a case that would support what Judge Lucero is suggesting in his question? I cannot, Your Honor. And we've taken you over time. I apologize. That's fine. I'll give you a minute for rebuttal. All right. Thank you, Your Honor. Thank you. May it please the Court, John Holt for the Attorney General. Good morning. Substantial evidence supports the adverse credibility finding. The Court has no jurisdiction over the asylum claim pursuant to the statutory limitation for the untimely asylum application. Your Honor is correct. Petitioner came into the United States in 2003 and didn't file his asylum application until 2009. He was five years late. He does not establish any exception that would justify the untimely filing of his asylum application. Well, if we found that when I guess the individual that he was following, is it Batarama or the one that he had the problem with? What's? Beni Marawa. Beni Marawa. Beni Marawa? Yes. I call him the commander because he was the head of the military. Commander. Okay. Well, I'll go with that. If we find that when the commander decided not to have any elections and said that he would kill him, could that amount to when he realized that, okay, it's not safe to go, it's changed country conditions? That really wasn't a changed country condition. A changed country condition under the exception applies when it materially affects the eligibility for asylum. And let's look at the facts. The commander threatened him in 2000, allegedly, and he came to the United States. That was a very personal threat. He said if he had a gun, the commander said if he had a gun he would kill Petitioner. So he came to the United States. After he came to the United States in 2006, the commander led a military coup in Fiji and became the head of the government. And so that was an event that if there was any question about after a political official threatened you for your life, then now that person is in power. After 2006, he should have filed his asylum application if that were a changed circumstance. There was absolutely nothing personal to Petitioner in terms of a threat, no further communication, no further contact. Well, would that, if he had filed it within the year after when he was threatened to kill him and he got power and all of that, would that be the kind of thing that would have qualified him for asylum? Perhaps if it were credible. But in this particular case, the agency found that the assertion of the threat in the year 2000 was not credible. If I may, I think that the court's focused on the case comes down very simply to the tension between Petitioner and the commander. And Petitioner was opposed to the political rise in power of the commander. The commander was head of the military forces. He then became a public official. He then became the lead official in Fiji. And so the tension relates to Petitioner's opposition to the commander's rise to political power. If you go to page 420 and 421 in the record, Petitioner submitted a timeline to support his claim for asylum and withholding of removal. What's significant is that timeline focuses the court on really the five critical events that are the factual puzzle pieces that put this whole complex case together. And that is, first of all, the 2000 coup. Secondly, the marriage of Petitioner's son to the prime minister of Fiji, the prime minister's daughter. And that was either in 2001 or 2006. Third, the 2002 threat. Fourth, the 2006 military coup that commander led. And then finally, the last event that he refers to is the 2009, January 2009 declaration that there would be no more elections. So those are really the five events. And they relate, they're interrelated to both the jurisdictional issue and the merits claim with regard to withholding of removal because they all turn on adverse credibility. And the court is focused on the adverse credibility finding because that's really the linchpin that unlocks this case. Well, so the adverse credibility claim does affect the asylum claim. Oh, it's at the core of it, yes. So if we find the adverse credibility to be supported, then your position is the asylum claim goes down. But if we didn't, if we found the adverse credibility was not supported, then what happens? Then you should remand the case to consider his asylum claim. Well, as an initial matter, if we were to find that substantial evidence did not support the adverse credibility determinations, wouldn't we remand for the BIA to consider the jurisdictional issue? As I understand Petitioner's argument, they're saying there's jurisdiction because there are disputed facts. And their basis for saying that is because the BIA cited the multi-case, which is the wrong standard. And so they infer from that that the BIA did not adopt the IJ's factual findings. With respect to credibility on the timing issue, which goes to whether his delay in filing for asylum was excused. So if we were to undercut the credibility determinations, would we remand for the BIA to consider that first issue of jurisdiction or just for the BIA to consider the merits of the asylum claim? Well, the critical point is the adverse credibility finding. And the adverse credibility finding establishes that there are disputed facts regarding the asylum application. And in this particular point, if there's one thing that's not in dispute, that we agree on, there are disputed facts regarding the credibility and Petitioner's claimed fear of the commander. So with the adverse credibility finding gone, the next question would be whether or not Petitioner establishes either exceptional circumstances or special circumstances that justify the untimely finding. We would say that the adverse credibility finding is at the core of those determinations by the agency in this situation. Well, but what about also, though, the adverse credibility finding was the Petitioner was dinged for not putting in corroboration. And his position was that, well, everyone knows about all of this, but then he wasn't allowed to submit evidence. Then he was told, well, you should have submitted corroborating evidence from newspaper articles or this, that, and the other, and he wasn't allowed an opportunity to do that. Is that problematic? It's not problematic because with regard to the adverse credibility finding, one of the factors the agency relied on was the failure to produce corroboration. Specifically, they found the corroboration that Petitioner did submit was deficient in that he produced affidavits of two colleagues that allegedly witnessed the tension between the commander and Petitioner, and they were allegedly present at this confrontation, but they never mentioned the confrontation at all in their affidavits. And secondly, the confrontation that occurred allegedly in the year 2000 in a public forum, a political meeting in Fiji, over 500 people, according to Petitioner, were present at this confrontation where the commander said, if I had a gun, I would shoot you and kill you for the lies you're perpetuating about my involvement in the 2000 coup. Not one affidavit, not one piece of evidence, not one news article to support that that confrontation ever occurred. Now, Petitioner asserts that under Wren, he's entitled to be confronted with the lack of corroboration. As the court, as the judge pointed out, Wren is implicated when the court finds you not, excuse me, credible, and then relies on the failure to produce corroboration. Here, the agency found Petitioner not credible, and so Wren is not implicated. But isn't it even more, if they're finding you not credible, isn't it more necessary to let you try to talk the agency into finding you credible? Because the corroboration might, if he could produce corroboration of the threat, that might change his credibility finding, right? That he could have, that's true, but there's no reason under the law as presently in terms of Wren, as we explained in our brief, is implicated where the accused is found, where the Petitioner is found not credible. So that particular principle of law, in terms of confronting and giving the opportunity to provide corroboration, is not implicated, Wren is not implicated in this case. Oh, wow, that seems a pretty narrow reading of it, because it seems if you're found not credible, there's a bigger need for corroboration and to change that. Because everything we know, everything here, if everything comes from the credibility, the adverse credibility finding, that's if you're hinging everything on that. And so you're saying that not being given an opportunity to, if the adverse credibility finding is based on not presenting corroborating evidence, wouldn't that be important? That is important, and the court focused on lack of corroborating evidence. But there were other factors that the court relied on also. First of all, the internal inconsistencies in his statement with regard to whether or not, as each of the judges have pointed out, whether or not he supported the 2000 coup. And the reason why that's important is that if Petitioner was ambivalent or he supported the coup, then how could he out the commander for his support or involvement in the coup? He had to be on the other side. And he admitted, actually, to ABC News that he supported the coup. That news article, he admitted that the news article was correct, that he did inform. And the commander was out of the country at the time of the coup. Is that correct? A bigger pardon? Wasn't the commander out of the country? He was. The commander was out of the country at that time. And, of course, the commander took the position that these were lies about his involvement. Does that help you or hurt you? Excuse me? Does that help you or hurt you, the fact that the commander was out of the country? It could have been a matter of convenience, right? Well, but he was the head of the military, and the question is, did he support the coup? That was the issue, not whether he was present in the country at the particular time that he supported the coup. And so what's significant is that Petitioner's fear relates to his outing the commander for his involvement in the coup. And because Petitioner was ambivalent about his involvement, the judge necessarily questioned the reliability of that particular point. And, finally, the most important thing is about the son's marriage. On page 421 of the record, Petitioner said – Well, I would say on that it's clearly an error. The judge, immigration judge, said that there was no response. That's simply not so. He said – he had an explanation. He said, I don't know why that's there. I think it's a transcriptional error. But, clearly, the marriage was in 2001. Well, there's no basis on which the immigration judge could say that it was not responsive. It's simply not so. Well, if I may, Your Honor, it's not responsive in this sense. How can – for the entry in 2006, it specifically says Petitioner, quote, happily prepares to return to Fiji. I understand. But he says, I don't understand where that came from. That it certainly was not my testimony. And that has to be – he says, I don't know where that came from. It was his submission to the court. And the court found that that contradicted his testimony because, in the year 2001, he was still in Fiji. How could he happily be preparing to return to Fiji when he's still in the country? I understand. And so that's the contradiction. And so the court was – I don't want to extend your argument time, so I understand the answer. Thank you, Your Honor. Thank you. Thank you. Okay. I'll give you two minutes for rebuttal. Thank you. Well, I don't have a case for Your Honors that would answer Your Honor's question. Isn't the answer that it's supposed to be a totality of the circumstances test? If you knock out one of the prongs, then all of a sudden you don't have much of a totality, right? I would agree with that, Your Honor. Well, you don't have the totality with respect to one basis. I mean, there are multiple reasons why you could find somebody not credible, which is what the IJ did here. Yes. However, the major error that the immigration judge made is that she came to these legal conclusions without providing any explanation. And then the Board of Immigration of Appeals, when discussing the immigration judge's findings, decided to try and make some inferences on their own. But matter of DR prohibits the board from making those inferences. And so if there is further fact-finding that needs to be done, which we would argue there is more fact-finding that needs to be done, then this court must remain in this case for that fact-finding to happen. Well, I think if we find one reason that's supported, that's enough. I think that's what the cases say. Like, let's say the three reasons are that you have a hangnail and that you said it was 102 instead of 101, but that you forgot to admit that your whole family was murdered. All right. Okay. The first two are pretty trivial, and we say, okay, that doesn't support adverse credibility. But the fact that you failed to admit that your whole family was murdered because of your political beliefs, and now you've suddenly said that, that's pretty important, and that would be enough. And the case say if one supported, that's enough. I think with those facts, as Your Honor presented it, that would be the case. But I don't believe that here we have a situation such that there is further evidence. Well, unfortunately, there's cases that say that, and you don't have a case that says otherwise. But do you have a case that applies the totality of circumstances in the manner suggested by Judge Lucero's question? Yes, Your Honor. What is that case? In Lou V. Holder, decided by this court in 2011, the discrepancy in that case concerned the date of the applicant's uncle's arrest, which was a key event in her family's supposed past persecution. And the court found that even though that date was given incorrectly during testimony, that that was trivial. Okay. So what you're talking about, you're talking about totality of the circumstances in one basis for finding somebody not credible, not the issue of does the totality of circumstances mean that multiple bases have to be considered together. So what you've cited is not a case that seems factually on point. It's your best case, is what you would say. I think it's the best case I have available at this time, Your Honor. Okay. Thank you. All right. Unless there's further questions, we've gone over. Thank you very much both for your argument. This matter will stand submitted. Thank you, Your Honors.
judges: Lucero, Callahan, Bade